**UNITED STATES of America, Appellee,**

v.

**Daniel K. CONNERS, Appellant.**

**No. 89–5096.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1989.

Decided Jan. 24, 1990.

---

John W. Lundquist, Minneapolis, Minn., for appellant.

Franklin L. Noel, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and BRIGHT, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Daniel K. Conners appeals from his convictions for three counts of wire fraud under 18 U.S.C. § 1343 (1982), four counts of embezzlement of bank funds in violation of 18 U.S.C. § 656 (1982), and four counts of making false entries in bank records in violation of 18 U.S.C. § 1005 (1982). Conners had acquired control of the Peoples State Bank of Mazeppa and the government charged that his fraudulent activities caused the bank to lose $5.8 million and led to the bank's insolvency, which required the Federal Deposit Insurance Corporation to cover the loss. On appeal, Conners argues that the district court[1] erred by not properly instructing the jury on his good faith defense and his theory of defense, not ordering sequestration of a government witness, and not excluding certain evidence of other crimes. He claims that the court denied him due process by limiting his cross-examination of government witnesses, and that he was prejudiced by the jury's exposure to extraneous information. Finally, Conners asserts that the evidence was insufficient to sustain his convictions, and that charging him with both embezzlement and making false entries was duplicitous. For the reasons discussed below, we affirm the judgment of the district court.

During the mid–1980's, Conners was actively involved in numerous business ventures. He worked as a stock broker while searching for businesses he could buy on a leveraged basis. He was able to acquire the Kloster–Madsen Construction Company in Bloomington, Minnesota, as well as many other businesses. In describing his business activities, Conners states in his brief that he "moved rapidly from one project to another with great enthusiasm but scant attention to detail and paperwork." (Appellant's Brief at 3).

Conners became interested in buying and selling loan packages at a profit and believed that owning a financial institution would aid him in this endeavor. He hired others to identify potential purchases and, after negotiations to purchase one bank had failed, he succeeded in becoming the majority shareholder of the Mazeppa Bank. In his brief, Conners admits that, at that point, he "had no banking experience whatsoever but intended to learn as he went along." (Appellant's Brief at 4).

After taking over the Mazeppa Bank, Conners engaged in a series of complex financial transactions which, he claims, were supposed to increase the funds held on deposit in order to lend those funds at profitable interest rates.

Conners first used deposit brokers to increase the funds held on deposit at the Mazeppa Bank and then arranged for the bank to buy loan packages from a corporation owned by Conners, American Guaranty Title and Escrow Company, in five transactions. At Conners' request, James Hightower, a Texas businessman, had agreed to locate and purchase pools of loans held by Texas banks and then sell these loan packages to American Guaranty. Toward this end, Hightower purchased loans for five cents on the dollar from Texas banks. The Texas banks had already charged off most of these loans as uncollectible. American Guaranty then resold the loan packages to the Mazeppa Bank for 100 cents on the dollar.

American Guaranty used the money raised from sale of the loan packages to invest in real estate and to make loans to Conners' businesses, primarily Kloster–Madsen. Conners also embezzled funds to repay debts he had incurred by borrowing against a warehouse line of credit at First National Bank of Minneapolis. In addition, Mazeppa Bank funds were used to buy the "Isle of Happy Days" Resort in Cedar Lake, Wisconsin. There is conflicting evidence as to whether the resort was bought for Conners' personal use or as a business acquisition.

The FDIC audited the Mazeppa Bank, and its examiners criticized the transactions between the bank and American Guaranty, particularly since the loan files

---

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

were not on bank premises. In response, Conners agreed to arrange for the repurchase of the loan packages from the bank. His plan was to have another bank which he owned, the Greeley Industrial Bank of Greeley, Colorado, buy the loan packages from the Mazeppa Bank. He intended to accomplish this by using a deposit broker to increase deposits at the Mazeppa Bank and then transferring that money to the Greeley bank to fund the purchases.

When Conners realized that his plan was doomed to failure because the Mazeppa Bank would have a large depository liability and no significant income-producing assets, he disclosed his activities to the Minnesota Department of Commerce and resigned from his office as president of the Mazeppa Bank. He was subsequently charged with wire fraud, embezzlement, and making false entries in bank records.

At trial, the essence of Conners' defense was that his actions were in good faith and that he had no intent to defraud. After a two week trial, Conners was convicted on all eleven counts, and sentenced to eight years imprisonment, followed by four years of probation. A special assessment was imposed upon Conners pursuant to 18 U.S.C. § 3013 (Supp. V 1987).

## I.

■ Conners argues that the district court erred by failing to properly instruct the jury both on his defense of good faith and on his theory of the defense.[2] He argues that this had a critical impact on the trial because his entire defense was built

upon his good faith beliefs and intentions, and also because good faith is a complete defense to a charge of wire or mail fraud. *United States v. Casperson*, 773 F.2d 216, 223 (8th Cir.1985); *United States v. Sherer*, 653 F.2d 334, 337 (8th Cir.), *cert. denied*, 454 U.S. 1034, 102 S.Ct. 573, 70 L.Ed.2d 478 (1981).

He asserts that the court should have accepted his theory of defense instructions since he made a timely request, the evidence supported the instructions, and the instructions correctly stated the law. *United States v. Montgomery*, 819 F.2d 847, 851–52 (8th Cir.1987). Conners insists that the court's rejection constitutes reversible error because the instruction he offered referred to his good faith belief in his plan to refinance the bank, the value of the loan packages, and the accuracy of the records, whereas the instruction actually given amounted to nothing more than a broad denial of the charges.

The record makes clear that the court instructed the jury in substantial detail on the relevant law and defined terms central to Conners' good faith defense, such as "specific intent," "willfully," "intent to defraud," "embezzle," "false entry," and "false or fraudulent representation." (Tr. 1171–84). The jury was also informed that "more than mere maladministration or poor judgment" was required to convict Conners. (Tr. 1171).

The court gave separate theory of defense instructions on the wire fraud charge and on the embezzlement and false entry charges.[3] As to the wire fraud, the court's

---

**2.** The government contends that Conners failed to properly preserve his objections to the instructions, and therefore, this court may reverse the district court only upon a showing of plain error. Fed.R.Crim.P. 30, 52. Conners vigorously argues that he properly preserved his objections. We will not decide this issue as we are satisfied that the court's instructions were not erroneous.

**3.** As to wire fraud, the court's instruction included the following:

> [T]he defendant denies that he is guilty of the offenses of wire fraud which are alleged in Counts I, II, and III of the indictment.
> The defendant maintains that he did not formulate a scheme or artifice to defraud the Peoples State Bank of Mazeppa.

> It is his position that he transferred funds in good faith to the ... Greeley Industrial Bank, so that Greeley could acquire loan files he states were held by the Peoples State Bank of Mazeppa.

(Tr. 1177–78).

As to the embezzlement and false entry charges, the court included the following:

> The defendant ... denies that he embezzled funds from the Peoples State Bank of Mazeppa or made false entries in the bank's books as charged in the indictment.
> He maintains that he acted lawfully in obtaining funds for and disbursing funds from that bank. The defendant maintains he acted in good faith and without an intent to deceive or defraud when these transactions took place.

(Tr. 1184).

charge to the jury included the statement: "It is [Conners'] position that he transferred funds in good faith to the ... Greeley Industrial Bank, so that Greeley could acquire loan files he states were held by the Peoples State Bank of Mazeppa." (Tr. 1177–78). Regarding the embezzlement and false entry charges, the court instructed, in part, that "[t]he defendant maintains he acted in good faith and without an intent to deceive or defraud when these transactions took place." (Tr. 1184).

The instructions given by the court stated the law accurately and incorporated the substance of Conners' defense. Conners was not entitled to more. The court was not required to instruct the jury in the exact language requested by Conners. *Casperson*, 773 F.2d at 223; *United States v. Brown*, 584 F.2d 252, 259 (8th Cir.1978), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979).

We are not faced with a situation such as existed in *United States v. Casperson*, cited by Conners in support of his argument. In *Casperson*, the court failed to instruct the jury on either the defense of good faith or on the defendant's theory of defense. 773 F.2d at 222. That is not the case here. Conners is objecting to the words actually used by the court and not to failure to give an instruction. When we evaluate "the adequacy of [the] trial court's instructions by considering them as a whole," *id.* at 223, we are satisfied that there was no error.

## II.

■ Conners asserts that the district court committed reversible error by failing to order that a certain government witness be sequestered, as required by Rule 615 of the Federal Rules of Evidence.

At trial, the government was represented at counsel's table by an FBI case agent and by an FDIC examiner, William Horlitz. Horlitz was also the government's final witness, and he testified about the FDIC's investigation of Conners. When Conners objected, under Rule 615, to Horlitz's presence during the trial, the court initially ordered that Horlitz be sequestered. The government sought permission for Horlitz to remain in the courtroom on the ground that his presence was essential to presentation of its case, and the court reversed its earlier ruling and allowed Horlitz to remain. On appeal, Conners argues that the court erred by allowing Horlitz to sit at counsel's table throughout the trial and then to testify on behalf of the government.

The district court's ruling is reversible only upon a clear showing of abuse of discretion. *United States v. Faul*, 748 F.2d 1204, 1221 (8th Cir.1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 632 (1985); *United States v. Alvarado*, 647 F.2d 537, 540 (5th Cir.1981). Federal Rule of Evidence 615(3) expressly excludes "a person whose presence is shown by a party to be essential to the presentation of the party's cause" from the general rule that witnesses will be sequestered upon request of a party. The government relies, in part, upon this exception in asserting that the court properly permitted Horlitz to remain during the trial. It argues that Horlitz was called as an expert in the area of bank examination and that his presence during the trial was essential to his ability to effectively testify regarding the exhibits before the jury. For this reason, we believe that the court did not abuse its discretion by permitting Horlitz to remain in the courtroom.

Abuse of discretion justifying reversal cannot be found without a showing of substantial prejudice. *Faul*, 748 F.2d at 1221. The fact that no such prejudice was shown here further supports our decision. The district court specifically found that the nature of Horlitz's testimony was "particularly not susceptible to being tempered or shaped by what he sees or hears in the courtroom." (Tr. 74). In light of this finding, we are satisfied that Conners was not substantially prejudiced by the fact that the witness, Horlitz, remained in the courtroom before testifying.

### III.

■ Conners contends that he was denied due process of law, his rights under the sixth amendment, and his right to present a defense when improper limitations were placed on his cross-examination of government witnesses. Specifically, he argues that he was prevented from eliciting testimony from witnesses about a transaction involving a resort located in northern Minnesota called the Causeway on Gull. The Causeway on Gull sold time-share contracts to American Guaranty, which, in turn, sold them to the Mazeppa Bank at a profit. Conners claims he could have supported his good faith defense through cross-examination of government witnesses about the Causeway on Gull transaction by showing: (1) that Conners was not good at documentation; (2) that American Guaranty was not a mere shell; and (3) that Conners believed the loan transactions with Hightower (the Texas businessman) and with Causeway on Gull were similar. The court sustained the government's objection to this evidence on the grounds of lack of relevancy.

We review the court's exclusion of this evidence under an abuse of discretion standard. *Wade v. Haynes,* 663 F.2d 778, 783 (8th Cir.1981); *United States v. Bernhardt,* 642 F.2d 251, 253 (8th Cir.1981). Applying this standard here, we believe the court did not abuse its discretion. After listening to an offer of proof by Conners, the court found that the Causeway on Gull transaction was not the subject of criminal charges, was irrelevant to the issues before the jury, and was likely to mislead and confuse the jury. (Tr. 122–23, 334, 491–92).

Furthermore, we reject Conners' argument that the evidentiary rulings prevented him from presenting his defense. The record reveals that Conners testified without objection to the details of the Causeway on Gull time share contracts. (Tr. 916, 926–27). In addition, Conners chose not to pursue the opportunity he was given to conduct a broader examination of one of the witnesses with knowledge of the Gull transaction, Kevin LaCasse.

### IV.

■ Conners urges that the district court violated Rules 403 and 404(b) of the Federal Rules of Evidence by improperly permitting prejudicial evidence of other crimes to be introduced. Specifically, he challenges the court's admission of testimony that he defrauded the First National Bank of Minneapolis by creating fictitious mortgages and that he fraudulently used a warehouse line of credit.

Rule 404(b) allows the admission of evidence of other crimes for purposes other than "to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b).

We are satisfied that the court did not abuse its discretion in admitting this evidence. Rule 404(b) expressly permits evidence of other crimes to prove a defendant's motive. This evidence is probative on the issue of Conners' motive in embezzling funds from the Mazeppa Bank because it shows he had a need for a large amount of money. The evidence established that Conners had incurred personal debts to the First National Bank of Minneapolis by borrowing against his warehouse line of credit there to fund his other businesses and that he desired to repay these debts.

Such evidence is not only relevant, but we are convinced that its probative value outweighs the dangers of unfair prejudice, confusion, or other dangers listed in Rule 403 which call for exclusion. There was no abuse of discretion in admitting this evidence.

### V.

Conners next argues that he was unfairly prejudiced by the jury receiving extraneous communications. Specifically, Conners complains about the presence of a newspaper article in the jury assembly room and the facial expressions of one of the court's clerks during Conners' presentation of his case. This argument is without merit.

■ We may reverse the district court's rulings in response to these allegations of extraneous communications only upon a

showing of abuse of discretion. *Marshall v. United States*, 360 U.S. 310, 312, 79 S.Ct. 1171, 1172, 3 L.Ed.2d 1250 (1959); *United States v. Richardson*, 651 F.2d 1251, 1252 (8th Cir.1981). In response to Conners' concern over the jury's exposure to the newspaper article, the district court polled the jury and discovered that none of the jurors had read the article in question. Furthermore, the court extensively questioned two of the jurors who had seen the newspaper's headlines, but had not read its stories. At Conners' request, the court dismissed one of the jurors. The court did not abuse its discretion in refusing to grant additional relief to Conners.

■ In response to Conners' charge that one of the court's clerks made inappropriate facial gestures in the presence of the jury, the court again offered to poll the jury. When Conners rejected this offer, the court interrogated both the juror who had complained of the clerk's expressions and the clerk himself. The court found that no "evidence or suggestion of a comment from the Court" had been made. (Tr. 976). The court then immediately cautioned the jury that the actions of the court staff should not be interpreted as commentary, (Tr. 976), and further instructed the jury that "no act or gesture by the Court or its staff is designed to suggest or convey in any way or manner any intimation of what verdict I think you ought to find." (Tr. 1188). The court's findings and curative instructions demonstrate that it did not abuse its discretion in refusing to grant Conners further relief on his complaint about the facial expressions of the clerk.

## VI.

■ Conners argues that the evidence was insufficient to sustain his conviction because the government failed to establish that he acted with the intent to defraud. To support his contention that he lacked the requisite intent to defraud, he argues:

Conners certainly made no claim to understanding banking or having any experience in it. Rather, he ran the Bank as he would one of his private, unregulated enterprises; that is, with transactions among affiliates and disregard for detail and paperwork. He had a simple goal and that was to raise deposits and loan the money out at higher rates.

(Appellant's Brief at 53). He claims that further support is provided by the fact that he used the $5.8 million to fund his businesses and to make charitable donations. Conners admits that "the facts do establish horrendous banking practices," (Appellant's Brief at 54), but nevertheless insists that the government failed to establish his intent to defraud. We must review the sufficiency of the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

This argument is patently untenable. The record is replete with references to Conners' intent to defraud the bank, embezzle funds, and make false book entries in attempts to conceal his activities. There was evidence that he personally opened a secret account in the name of the Mazeppa Bank which he used to raise approximately $6 million in brokered deposits, and that he attempted to conceal these actions from the bank and its examiners. (Tr. 469, 486, 502, 519, 531–36, 554–56). There was testimony that Conners used the secretly-raised deposits to create the false appearance that some of the non-existent loan packages reflected on the bank's records had been resold to a third party when, actually, the transactions had used the bank's own deposits. (Tr. 464–67, 513, 780).

There was evidence that Conners attempted to conceal other fraudulent transactions by bringing to the bank trunks full of loan documents acquired through his dealings with Hightower and offering them as evidence of the genuineness of the loan packages on the books. (Tr. 1011–13). In fact, while these loans had a face value of about $3 million, they had actually been acquired for only five cents on the dollar. (Tr. 585–93). Some of the loans had been reduced to uncollected judgments while others had been discharged in bankruptcy. (Tr. 1010–11).

Conners' intent to defraud is more than sufficiently supported by the evidence.

Conners also asserts that the evidence was insufficient to establish that the wire transfers were in furtherance of his scheme to defraud, as required by 18 U.S.C. sections 1341 and 1343. This argument is equally unavailing. The wire transfers were sufficiently closely related to Conners' scheme to bring his conduct within these statutes. *See United States v. Maze*, 414 U.S. 395, 399, 94 S.Ct. 645, 648, 38 L.Ed.2d 603 (1974); *United States v. Tackett*, 646 F.2d 1240, 1242 (8th Cir. 1981). The evidence established that the wire transfers were made in an attempt to conceal the illegal transactions from the FDIC examiners in furtherance of Conners' fraudulent scheme. It is not dispositive that the wire transfers occurred *after* Conners fraudulently obtained the money since the concealment was part of the scheme. *See United States v. Sampson*, 371 U.S. 75, 80, 83 S.Ct. 173, 175, 9 L.Ed.2d 136 (1962); *Tackett*, 646 F.2d at 1243. Accordingly, we believe that the evidence was sufficient to establish that the wire transfers were "for the purpose of executing such scheme or artifice," as required by 18 U.S.C. sections 1341 and 1343.

## VII.

Conners' final argument is that the embezzlement and false entry charges were duplicitous and therefore, he should not have been subject to consecutive sentences for those charges. He claims that he cannot be punished twice for a single course of conduct which entailed both embezzlements and false entries in bank records. We reject this argument.

Our review of this issue is governed by *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In *Blockburger*, the Court had to determine whether Congress intended the same conduct to be punishable under two separate statutes. The Court declared that:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine

whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Id.* at 304, 52 S.Ct. at 182.

When we apply the *Blockburger* analysis to the facts before us, we are compelled to conclude that Conners' argument fails.[4] Conners was convicted of embezzlement in violation of 18 U.S.C. § 656, which required the government to prove that he embezzled or misappropriated funds entrusted to the bank. Conners was also convicted of making false entries in bank records in violation of 18 U.S.C. § 1005, which required no proof of embezzlement or misappropriation. The conviction for making false entries, however, did require the government to establish that Conners made a false entry in the bank records. *See* 18 U.S.C. § 1005. Proof of a false entry is not required for an embezzlement conviction under 18 U.S.C. § 656. Since "each provision requires proof of a fact which the other does not," 284 U.S. at 304, 52 S.Ct. at 182, the conduct involved two offenses and, therefore, the charges were not duplicitous and the consecutive sentences were proper.

\* \* \*

In conclusion, we affirm the district court's judgment in all respects.

---

**4.** The Fifth Circuit and Seventh Circuit have rejected similar arguments. *See United States v. Stovall*, 825 F.2d 817, 823 (5th Cir.), *modified on* other grounds, 833 F.2d 526 (1987); *United States v. Marquardt*, 786 F.2d 771, 779 (7th Cir.1986).