2006 ND 66

**Richard John NESVIG, Plaintiff, Appellant and Cross–Appellee**

v.

**R. Gordon NESVIG, Defendant, Appellee and Cross–Appellant.**

No. 20050125.

Supreme Court of North Dakota.

March 29, 2006.

Henry H. Howe, Howe & Seaworth, Grand Forks, N.D., for plaintiff, appellant and cross-appellee.

Troy Robert Morley (argued) and Patrick Robert Morley (on brief), Morley Law Firm, Ltd., Grand Forks, N.D., for defendant, appellee and cross-appellant.

KAPSNER, Justice.

[¶ 1] Richard Nesvig appealed and Gordon Nesvig cross-appealed from a judgment, entered after a second jury trial, dismissing Richard Nesvig's action against Gordon Nesvig for professional malpractice and breach of fiduciary duty and awarding Gordon Nesvig costs and disbursements. Because we hold the district court did not abuse its discretion in any of its rulings challenged on appeal, we affirm.

I

[¶ 2] Many of the relevant facts are set forth in our prior decision in this case, *Nesvig v. Nesvig*, 2004 ND 37, 676 N.W.2d 73 (*"Nesvig I "*), and we will not repeat them except as necessary to assist in resolving the issues raised in this appeal.

[¶ 3] In 1984, Richard Nesvig was severely injured in an automobile accident. Gordon Nesvig represented Richard Nesvig in a personal injury action that ultimately resulted in a net award of $611,768.18 in December 1993. *See Nesvig v. Anderson Bros. Constr. Co.*, 490 N.W.2d 478 (N.D.1992). Gordon Nesvig deposited the money in an interest-bearing money market account naming Richard Nesvig as beneficiary and Gordon Nesvig as trustee. In July 1998, Richard Nesvig petitioned for appointment of a limited and special conservator. Gordon Nesvig filed a concurrence in the need for a conservator, which stated in part that he had been acting as an informal conservator for Richard Nesvig since 1983, and that the portion of Richard Nesvig's brain that allows him to make decisions is impaired. In July 1998, Norwest Bank was appointed as Richard Nesvig's conservator. In August 1998, Gordon Nesvig transferred the remaining balance of $548,100.88 in Richard Nesvig's money market account to the conservatorship.

[¶ 4] In 2000, Richard Nesvig sued Gordon Nesvig, alleging Gordon Nesvig breached a fiduciary duty by investing the money in a money market account instead of some other prudent investment. After an initial trial, a jury returned a special verdict, finding that there was no agreement to invest the money in something

other than a money market account, and that Gordon Nesvig acted in good faith in failing to return money to Richard Nesvig.

[¶ 5] In *Nesvig I*, 2004 ND 37, ¶ 24, 676 N.W.2d 73, this Court reversed and remanded, holding the jury instructions and special verdict erroneously limited the jury's inquiry to whether Gordon Nesvig acted in good faith in failing to return the money to Richard Nesvig and whether there was an agreement to invest the money in something other than a money market account, without consideration of an attorney's obligation to provide advice appropriate for the situation. Because the instructions did not correctly and adequately inform the jury about the applicable law on an essential issue of the case, a new trial was ordered. *Id.* After a second trial, the jury found there was an attorney-client relationship between the parties, but Gordon Nesvig had not breached a duty to Richard Nesvig.

## II

[¶ 6] In his appeal, Richard Nesvig raises a number of issues regarding the district court's pretrial and trial rulings, including a number of evidentiary issues.

## A

[¶ 7] Richard Nesvig argues the district court erred in quashing a subpoena issued to his own expert witness, Wendell Herman.

[¶ 8] At the second trial, Wendell Herman was subpoenaed by Richard Nesvig to serve as his expert witness on the issue of damages for Gordon Nesvig's failure to invest Richard Nesvig's funds prudently. Herman, a vice president and senior trust administrator at Wells Fargo Bank, had testified at the first trial as an expert witness; however, sometime before the second trial in October 2004, Herman's employer, Wells Fargo, informed him that he would not be allowed to testify at the second trial because of corporate policy. Herman communicated this in correspondence to Richard Nesvig's attorney as early as June 2004. Herman had previously refused compensation for his expert testimony in the first trial and continued to refuse to accept any payment.

[¶ 9] In a pretrial ruling quashing the trial subpoena for Herman, the district court determined Richard Nesvig was attempting to secure the expert opinion of an unretained expert by use of a subpoena. The district court held that although Richard Nesvig offered Herman consideration in exchange for his expert testimony at the first trial, Herman refused payment, which did not alter Herman's status as an unretained expert at the second trial. The district court also found Richard Nesvig knew Herman would be unavailable to provide expert testimony at the second trial, almost four months before that trial began. The court held it was to Richard Nesvig's own detriment that he failed to seek another expert.

[¶ 10] N.D.R.Civ.P. 45(c)(4)(iv), addresses the subpoenaing of unretained experts, and states:

> On timely motion, the court by which a subpoena was issued shall quash or modify a subpoena that
>
> . . . .
>
> (iv) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party.

[¶ 11] We have often said that where a state rule is adopted from a federal rule, we may consider the federal courts' interpretation of the federal rule as persuasive authority for construing our state rule. *See Matrix Props. Corp. v. TAG Invs.,*

2002 ND 86, ¶ 13, 644 N.W.2d 601; *City of Dickinson v. Lindstrom,* 1998 ND 52, ¶ 11, 575 N.W.2d 440; *see also* N.D.R.Civ.P. 1, Explanatory Note.

[¶ 12] We review the district court's decision to quash a subpoena for an abuse of discretion. *See Moore v. State,* 2006 ND 8, ¶ 5 (holding trial court did not abuse its discretion in quashing subpoena); *State v. Jensen,* 333 N.W.2d 686, 692 (N.D. 1983) (holding denial of applications for order compelling discovery and for subpoenas duces tecum was not abuse of discretion). An abuse of discretion by the district court is never assumed, and the burden is on the party seeking relief affirmatively to establish it. *Flattum–Riemers v. Flattum–Riemers,* 2003 ND 70, ¶ 7, 660 N.W.2d 558. The district court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Id.; Schaefer v. Souris River Telecomm. Coop.,* 2000 ND 187, ¶ 10, 618 N.W.2d 175. The party seeking relief must show more than the district court made a "poor" decision, but that it positively abused the discretion it has under the rule. *Flattum–Riemers,* at ¶ 7. We will not overturn the district court's decision merely because it is not the decision we may have made if we were deciding the motion. *Gepner v. Fujicolor Processing, Inc.,* 2001 ND 207, ¶ 13, 637 N.W.2d 681.

[¶ 13] The language of Rule 45(c)(3)(B)(ii), Fed.R.Civ.P., which is identical to N.D.R.Civ.P. 45(c)(4)(iv), was adopted to address a growing problem of the use of subpoenas to compel the giving of evidence and information by unretained experts, and to provide appropriate protection for the intellectual property of non-party witnesses. *See Klay v. All Defendants,* 425 F.3d 977, 984 (11th Cir.2005) (discussing the advisory committee notes and explaining the concerns for adopting Rule 45(c)(3)(B)); *Heffron v. District Court of Oklahoma County,* 77 P.3d 1069, 1082 (Okla.2003) (observing that the rule, rather than being concerned with fairness between litigants to the underlying litigation, has as its purpose the protection of the unretained, non-occurrence expert). The advisory committee notes to Fed. R.Civ.P. 45(c)(3)(B)(ii) reflect the concern of the drafters that the subpoena power could be used to deprive expert witnesses of the opportunity to bargain for the value of their services:

Clause (c)(3)(B)(ii) provides appropriate protection for the intellectual property of the non-party witness; it does not apply to the expert retained by a party, where information is subject to the provisions of Rule 26(b)(4). A growing problem has been the use of subpoenas to compel the giving of evidence and information by unretained experts. Experts are not exempt from the duty to give evidence, even if they cannot be compelled to prepare themselves to give effective testimony, but compulsion to give evidence may threaten the intellectual property of experts denied the opportunity to bargain for the value of their services. Arguably the compulsion to testify can be regarded as a "taking" of intellectual property. The rule establishes the right of such persons to withhold their expertise, at least unless the party seeking it makes the kind of showing required for a conditional denial of a motion to quash as provided in the final sentence of subparagraph (c)(3)(B); that requirement is the same as that necessary to secure work product under Rule 26(b)(3) and gives assurance of reasonable compensation.

Fed.R.Civ.P. 45(c)(3)(B)(ii), Advisory Committee Notes (citations omitted). Thus,

the party seeking the compelled testimony must show a substantial need for the testimony or material which cannot be otherwise met without undue hardship, and the party must assure reasonable compensation to the person to whom the subpoena is addressed. *Id.* The advisory committee notes also provide the following factors to guide a court in whether to exercise its discretion to compel testimony of an unretained expert:

> [T]he degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony; the difference between testifying to a previously formed or expressed opinion and forming a new one; the possibility that, for other reasons, the witness is a unique expert; the extent to which the calling party is able to show the unlikelihood that any comparable witness will willingly testify; and the degree to which the witness is able to show that he has been oppressed by having to continually testify.

Fed.R.Civ.P. 45(c)(3)(B)(ii), Advisory Committee Notes (citing *Kaufman v. Edelstein,* 539 F.2d 811, 822 (2nd Cir.1976)).

■ [¶ 14] Here, in quashing the subpoena, the district court held it could not compel Herman to appear and provide expert testimony because he was an unretained expert. It is important to note that Richard Nesvig was not seeking to compel the testimony of an opposing party's expert, but rather his own expert. During oral argument to this Court, Richard Nesvig conceded he sought to call Herman only as an expert witness, not as a fact witness. An asserted purpose of Herman's testimony was to give an analysis of the hypothetical projected earnings for the money held by Gordon Nesvig for Richard Nesvig from December 1993 to August 1998.

[¶ 15] Although Herman testified at the first trial in this case, he refused any compensation and was ultimately prevented by his employer from testifying in the second trial. Relying on *Wreath v. United States,* 161 F.R.D. 448, 450 (D.Kan.1995), the district court determined for an expert to be "retained" the expert must receive some type of consideration, payment, or reward. *See also Smith v. State Farm Fire and Cas. Co.,* 164 F.R.D. 49, 55–56 (S.D.W.Va.1995) (stating, in the context of Rule 26(a)(2)(B), "[i]n the generally accepted meaning of the term in everyday usage, 'retained' or 'specially employed' ordinarily implies some consideration, a payment or reward of some kind, as consideration for being 'retained' or 'specially employed.' ").

[¶ 16] Richard Nesvig knew as early as four months before the second trial that Herman would not testify at that trial. Yet, on the eve of trial, the district court concluded Richard Nesvig acted to his own detriment in failing to secure a different expert witness or to seek an extension from the court to find another expert. Additionally, Richard Nesvig did not make a sufficient showing to the district court establishing Herman's testimony was of such a unique nature that another witness could not have been procured. Although it quashed the subpoena, the district court did attempt to ameliorate the situation by permitting Richard Nesvig to read Herman's testimony from the first trial to the jury in the second trial.

[¶ 17] Based upon our review of the record, we conclude the district court reached its decision through a rational mental process and did not act in an arbitrary, unreasonable, or unconscionable manner. We therefore hold the district court did not abuse its discretion in quashing the subpoena for Herman to testify at the second trial.

## B

■ [¶ 18] Richard Nesvig asserts the district court erred in denying his request to sequester Gordon Nesvig's expert witness, Grant Shaft.

[¶ 19] Richard Nesvig's argument is based primarily upon language from N.D.R.Ev. 615, which generally authorizes the court to sequester witnesses and states:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order on its own motion. This rule does not authorize exclusion of ... (iii) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

■ [¶ 20] The essential purpose of witness sequestration is to prevent one witness' testimony from influencing another. *See, e.g., R.R. Donnelley & Sons Co. v. North Texas Steel Co., Inc.,* 752 N.E.2d 112, 133 (Ind.Ct.App.2001). In interpreting language similar to N.D.R.Ev. 615(iii), the Indiana Court of Appeals held a witness whose presence is shown to be essential to the presentation of a party's case cannot be excluded from the courtroom, and this exemption is used most frequently for expert witnesses, "who are believed to be less susceptible to the temptation to shape their testimony." *R.R. Donnelley & Sons,* at 134 (citing *Morvant v. Constr. Aggregates Corp.,* 570 F.2d 626, 629–30 (6th Cir.1978)).

[¶ 21] In *United States v. Conners,* 894 F.2d 987, 991 (8th Cir.1990), the appellate court ruled there was no abuse of discretion where the trial court permitted an expert in the area of bank examination to be present during trial, because the expert's presence was essential to his ability to testify effectively regarding exhibits before the jury. In *Conners,* the court also said there was no showing of substantial prejudice, where the district court found the nature of the expert's testimony was not "particularly ... susceptible to being tempered or shaped by what he sees or hears in the courtroom." *Id. See also Hollman v. Dale Electronic, Inc.,* 752 F.2d 311, 313 (8th Cir.1985) (holding the district court should have sequestered witnesses, but concluding the error was harmless because appellants failed to show they were prejudiced by the district court's refusal); *Hampton v. Kroger Co.,* 618 F.2d 498, 499 (8th Cir.1980) (holding neither error nor prejudice resulted from the district court's decision initially excluding appellant's expert witness from observing the parties' opening statements, but then permitting the expert to be present during the rest of the trial and hear all of the evidence).

[¶ 22] During the second trial, Richard Nesvig requested the district court to exclude expert witness Shaft from the proceedings. Gordon Nesvig argued, however, it was necessary for his expert to hear the trial testimony because the issues were somewhat different from the first trial and neither Gordon Nesvig nor Richard Nesvig had been deposed for the second trial. The district court agreed and permitted experts from both parties to hear the testimony. The district court concluded that since both experts were going to testify as to the attorney-client relationship between Richard Nesvig and Gordon Nesvig, they both needed to hear the facts. Additionally, Richard Nesvig has not demonstrated any prejudice from having both experts hear the testimony. We therefore hold the district court did not abuse its discretion by failing to sequester Gordon Nesvig's expert witness during trial.

## C

[¶ 23] Richard Nesvig argues the district court erred by not permitting him to

cross-examine Shaft about Shaft's testimony at the first trial.

[¶ 24] Rule 607, N.D.R.Ev., permits any party to attack the credibility of a witness by impeachment. Rule 611(b), N.D.R.Ev., which governs the scope of impeachment by cross-examination, provides:

> Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court, in the exercise of discretion, may permit inquiry into additional matters as if on direct examination.

[¶ 25] The district court has wide discretion over the mode and order of presenting evidence. *State v. Klein*, 1999 ND 76, ¶ 12, 593 N.W.2d 325. The district court, however, in exercising its discretion may preclude cross-examination despite its probative value under N.D.R.Ev. 403, where the question "is unfairly prejudicial . . . confuses the issues, misleads the jury, or causes an 'undue delay, waste of time, or needless presentation of cumulative evidence.'" *Klein*, at ¶ 12. This Court will not disturb the district court's decision on the scope of cross-examination absent an abuse of discretion. *Id.; State v. Osier*, 1999 ND 28, ¶ 5, 590 N.W.2d 205.

[¶ 26] The parties here have focused on the apparent failure during the second trial to record certain sidebar conferences relating to Richard Nesvig's cross-examination of Shaft. Gordon Nesvig argues the issue has not been preserved for review on appeal. We do not address that issue, however, because assuming the issue has been preserved for review, we conclude the district court did not abuse its discretion in limiting Richard Nesvig's cross-examination of Shaft.

[¶ 27] Richard Nesvig argues the district court erred by limiting and not permitting him to cross-examine Shaft about Shaft's testimony in the first trial and this Court's decision in *Nesvig I*. From our review of the record, however, Richard Nesvig was permitted to cross-examine Shaft about this Court's ruling in *Nesvig I*. For example, Gordon Nesvig points to the following exchange in Richard Nesvig's cross-examination of Shaft:

Q. Well, since we brought up the Supreme Court decision, the Supreme Court says that the good faith in the comment establishes a standard for a lawyer's decision to deposit money in either a client account or an IOLTA account and does not establish a good faith defense for returning a client's money or advising the client.

A. I believe—

MR. MORLEY: Object to the ruling, reading from the legal opinion [of the] case.

MR. HOWE: He has given his opinion what the Supreme Court protected him from or requires. This is a legitimate question.

THE COURT: Well, he can answer the question.

A. (The Witness continuing): I believe that is what I just said.

Q. Okay, so that sounds the same as what you just said?

A. But you are confusing an ethical obligation with a malpractice case. And we are not here to determine—as far as what I understand, Mr. Nesvig's ethics.

Q. Okay, well, Rule 1.15—

A. Yes.

Q. Is a disciplinary rule?

A. Yes, ethical rule.

Q. Okay, so it has no application for attorney malpractice?

A. That is correct with regard to the duty [for] malpractice, that is correct.

[¶ 28] Although Richard Nesvig asserts he was prevented from going into sufficient detail about *Nesvig I* in his cross-examination, the record reflects the district court was properly concerned with its own role in instructing the jury on the law and preventing confusion. We conclude that in limiting the cross-examination of Shaft, the district court did not act arbitrarily, unreasonably, or in an unconscionable manner.

### D

[¶ 29] Richard Nesvig also argues the district court erred in making a number of other evidentiary rulings relating to cross-examination of another witness, prohibiting rebuttal trial testimony, and modifying a prior motion in limine. Richard Nesvig argues the district court abused its discretion by permitting the reading of Wendall Herman's testimony from the first trial during the second trial, without removing certain testimony which fell within the court's initial in limine ruling. He additionally argues the court erred by not permitting him to present limited rebuttal testimony by both Richard Nesvig and Lois Nesvig and by preventing him from cross-examining Gordon Nesvig about how he used the portion of the settlement proceeds he received as attorney fees for handling Richard Nesvig's lawsuit.

[¶ 30] Under N.D.R.Ev. 401, 402, and 403, the district court has broad discretion in admitting or excluding evidence. *See Harfield v. Tate*, 2004 ND 45, ¶ 7, 675 N.W.2d 155. Relevant evidence is generally admissible. *Id.* Under N.D.R.Ev. 403, the district court has discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, including testimony which confuses the issues, misleads the jury, or causes undue delay, waste of time, or needless presentation of cumulative evi-

dence. *Harfield,* at ¶ 7; *see also Forster v. West Dakota Veterinary Clinic, Inc.,* 2004 ND 207, ¶ 47, 689 N.W.2d 366. Again, we conclude the district court did not abuse its discretion in limiting the cross-examination of Gordon Nesvig or prohibiting testimony by witnesses the court deemed to be repetitive and cumulative.

[¶ 31] Richard Nesvig argues the district court also abused its discretion by permitting certain evidence which exceeded the district court's previous order granting his motion in limine. However, an in limine ruling is only a preliminary order regarding admissibility of evidence. *See Luce v. United States,* 469 U.S. 38, 40–41, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984); *Evans v. Wal–Mart Stores, Inc.,* 976 S.W.2d 582, 584 (Mo.Ct.App.1998). A district court's in limine ruling "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Luce,* 469 U.S. at 41–42, 105 S.Ct. 460. Therefore, any order sustaining a motion in limine and excluding evidence is interlocutory in nature and subject to change by the district court during the course of the trial. *See, e.g., Smith v. Associated Natural Gas Co.,* 7 S.W.3d 530, 536 (Mo.Ct.App. 1999).

[¶ 32] Although Richard Nesvig argues the district court abused its discretion by "disregarding" its previous order in limine, the district court was free to do so. Here, the district court permitted the testimony of Wendell Herman from the first trial to be read at the second trial and concluded that testimony needed to be read in substantial part to avoid confusion and aid the flow of testimony. The neces-

sity of modifying the in limine order essentially benefitted Richard Nesvig after he failed to secure an expert witness for the second trial. We hold the district court did not abuse its discretion by permitting testimony that was initially precluded by the court's in limine order. The remaining instances of alleged error by the district court are without merit.

### E

[¶ 33] Richard Nesvig argues the district court improperly awarded costs and disbursements which included an expert witness fee for the time Gordon Nesvig's expert witness, Shaft, attended trial to hear the testimony of other witnesses. Richard Nesvig complains that the overall fees claimed for Shaft's involvement in the second trial exceeded the amount of fees from the first trial and that the fees included Shaft's time spent "sitting in" on the second trial as preparation time.

[¶ 34] The question of who is a prevailing party for an award of disbursements under N.D.C.C. § 28–26–06 is a question of law, subject to de novo review, while the question of the amounts to be allowed for disbursements is one of fact, subject to an abuse of discretion standard. *Dowhan v. Brockman*, 2001 ND 70, ¶ 10, 624 N.W.2d 690 (citing *Braunberger v. Interstate Eng'g, Inc.*, 2000 ND 45, ¶¶ 13, 24, 607 N.W.2d 904; *Lemer v. Campbell*, 1999 ND 223, ¶ 6, 602 N.W.2d 686). The district court is in a much better position than this Court to determine the amount, reasonableness, and necessity of the costs and disbursements sought by the prevailing party. *Vogel v. Pardon*, 444 N.W.2d 348, 353 (N.D.1989).

[¶ 35] We have previously found no abuse of discretion where an expert's fee included time spent observing portions of a trial. *See Byron v. Gerring Indus., Inc.*, 328 N.W.2d 819, 824 (N.D.1982) (conclud-ing defendants' presence at the trial was essential, in addition to the time he was actually testifying, so he could "listen to, and subsequently counter," plaintiff's expert's testimony and also aid in understanding the expert witness testimony). As we have already explained, the district court did not abuse its discretion in permitting Shaft to observe the trial in preparation for testifying at the trial. As for the amount of fees, the district court is in a better position than this Court to determine the reasonableness and necessity of these costs and disbursements. From our review of the record, we conclude the district court did not abuse its discretion in awarding costs for Shaft's attendance at the second trial.

### III

[¶ 36] In his cross-appeal, Gordon Nesvig asserts the district court erred in not awarding him costs and disbursements for both the first and second trials.

[¶ 37] He argues the district court erred in not awarding him the costs and disbursements from the first trial because he ultimately prevailed at the second trial. Under N.D.C.C. § 28–26–06, the prevailing party determination is based upon the merits, not damages. *Dowhan*, 2001 ND 70, ¶ 11, 624 N.W.2d 690. "A prevailing party is one 'in whose favor a judgment is rendered, regardless of the amount of damages awarded.'" *Id.* (quoting *Black's Law Dictionary* 1145 (7th ed.1999)). In *Lemer*, this Court explained:

> Generally, the prevailing party to a suit for the purpose of determining who is entitled to costs, is the one who successfully prosecutes the action or successfully defends against it, *prevailing on the merits of the main issue*, in other words, the prevailing party is the one in whose favor the decision or verdict is rendered and the judgment entered.

*Lemer,* 1999 ND 223, ¶ 9, 602 N.W.2d 686 (quoting 20 Am.Jur.2d *Costs* § 12 (1995)) (emphasis added).

[¶ 38] Here, Gordon Nesvig was not the prevailing party in the first trial after obtaining a judgment of dismissal, because this Court reversed that judgment and remanded for a second trial after we held the jury was improperly instructed upon a "good faith" defense for a professional negligence claim. The subsequent reversal which necessitated the second trial was not occasioned by any fault of Richard Nesvig. Gordon Nesvig also acknowledges this Court has previously held it is inappropriate to award costs from a previous trial where a subsequent trial is held after remand, particularly where the party to be taxed costs and disbursements was not at fault for necessitating the subsequent trial. *See, e.g., Kramer v. K.O. Lee and Son Co.,* 64 N.D. 84, 90, 250 N.W. 373, 375 (1933); *Taylor v. Minneapolis, St. P. & S.S.M. Ry.,* 63 N.D. 332, 344, 248 N.W. 268, 273 (1933); *Minneapolis Threshing Mach. Co. v. Huncovsky,* 52 N.D. 112, 119, 202 N.W. 280, 283 (1924); *Corbett v. Great Northern Ry.,* 28 N.D. 136, 150, 148 N.W. 4, 9 (1914). Gordon Nesvig is the prevailing party in the second trial, and the district court properly awarded costs and disbursements for only that trial.

[¶ 39] Gordon Nesvig asserts in the alternative that, although he was not the prevailing party after the appeal from the first judgment, he was still a prevailing party after the first trial because his counterclaim awarded him $1,293.96 from Richard Nesvig, which was not reversed in the first appeal and was again included in the final judgment after the second trial. Gordon Nesvig's counterclaim, which was based upon an accounting oversight, was apparently unopposed at both the first and second trials. This counterclaim can hardly be considered the main issue in this case. We conclude, as a matter of law, that Gordon Nesvig was not a prevailing party at the first trial based upon his minimal, unopposed claim so as to permit an award of costs and disbursements. We therefore hold the district court did not err in denying Gordon Nesvig costs and disbursements from the first trial.

### IV

[¶ 40] The district court judgment is affirmed.

[¶ 41] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.