Mrs. A. L. THOMPSON, Respondent, v. WILLIAM M. BAKER, Appellant.

(203 N. W. 195.)

**Evidence — written contract to pay sum of money for land together with specified interest not varied by parol assent to purported account stated.**

1. In an action to recover a sum of money alleged to be owing by the defendant to the plaintiff under a contract for the sale of land, or on an alleged account stated arising out of the same contract, it is *held:*

Where the provisions of a written contract require the payment of a stated amount of money as a consideration for the purchase of land, together with

Note.— (1) Right of parties to stipulate as to rate of interest, see 15 R. C. L. 21.
(2) Validity of agreement as to compound interest, see 15 R. C. L. 36.

interest at a certain rate, such contract, under § 5938 of the Compiled Laws of 1913, is not altered by parol assent to a purported account stated in which the interest is calculated at a different rate.

**Interest — compound interest may not be computed unless contract so provides.** /

2. Under § 6073 of the Compiled Laws of 1913, as amended by chapter 176 of the Session Laws for 1915, compound interest may not be computed unless the contract so provides.

**Contracts — construction by parties of ambiguous contract in renewal agreement will be followed.**

3. Where the provisions of a contract with respect to the payment of interest are ambiguous, and where it appears that the parties thereto in a renewal agreement had resolved the ambiguity in favor of a certain definite construction, the construction of the parties, will be followed.

Opinion filed March 11, 1925.

Contracts, 13 C. J. § 517 p. 546 n. 54; § 610 p. 594 n. 42.   Interest, 33 C. J. § 36 p. 192 n. 36.

Appeal from the District Court of Burleigh County, *Coffey,* J. Reversed and remanded.

*W. L. Smith,* for appellant.

*Theodore Koffel,* and *Hyland & Foster,* for respondent.

BIRDZELL, J.    This is an action to recover a sum of money alleged to be owing by the defendant to the plaintiff on account of a certain contract for the sale of land or on an account stated arising out of the same contract.    The plaintiff is the assignee of one Alonzo Thompson. She alleges that her assignor in 1909 entered into a written contract with the defendant to sell to the latter a section of land in Burleigh county for $16,000.00 payable on or before October 1, 1919, with interest at six per cent per annum; and that on June 21, 1919 she entered into a further contract with the defendant whereby she extended the original contract for three years.    It is then alleged that on or about October 1, 1921 an account was stated between the plaintiff and the defendant relating to the amount due on the land contract, exclusive of the principal sum, and that, upon such statement, a balance of $8,867-.34 was found to be due and owing from the defendant to the plaintiff,

which sum, together with the interest thereon and taxes and assessments, amounted to $10,262.94.

Upon the trial the plaintiff offered in evidence the land contract described in the complaint and also the extension agreement, whereupon the plaintiff's attorney, Mr. Theodore Koffel, took the witness stand and was the sole witness examined on behalf of the plaintiff. The necessity for his testifying was explained by him. After some testimony had been given, and objections interposed to the same, relating to plaintiff's Exhibit 3, which was referred to as an account stated, the witness said: "Yes, it is the account stated. I am trying to prove it on account of the fact that I haven't got the parties here. Mr. Harris was our witness and he took sick in Minneapolis and couldn't get out of bed and I didn't know that until just a short time before I went to Williston on a case I had there, and therefore I couldn't get his deposition."

The witness further testified that, in the spring of 1922 and in the latter part of May or the first of June, he had gone to Menoken in company with Frank Harris to see the defendant Baker and that he there had a talk with him; that during that conversation he presented the so-called account stated (Exhibit 3) to Baker and asked him if that was a true copy of the statement that one Thompson had left with him in October of the previous year; that Baker told him that it was; that the witness asked Baker if he had any objection to any of the items in the statement, whereupon Baker said "Yes, there were two or three small items and there was one item of $1500.00 for flax that he didn't get credit for." Objections being urged to some of this testimony, after some discussion the witness repeated "I then asked Mr. Baker if that was the account that he and Mr. Thompson had agreed upon in October, 1921." Mr. Baker said "Yes, that is the account and that is what we discussed then." Continuing, the witness stated "I asked Mr. Baker that—if you had any objections to any of the items, why did you not tell Mr. Thompson so at that time. Mr. Baker stated at that time that he thought the $1500.00 flax was included in the account and therefore made no objection to Mr. Thompson. I then asked Mr. Baker what year he claimed the $1500.00 flax and he said that it was for the year 1914. I then took the statement (Exhibit 3) and went over the list with Mr. Baker and showed him that he had received credit

for flax at various times for the year 1914 and in various amounts, and Mr. Baker then said, "I didn't so understand it, after I had read it over carefully. Then I asked Mr. Baker, I said—Have you any objection to any item on this statement at this time? Mr. Baker then told me if he had been given credit for the flax in 1914, he then had no objection to any of the items in the account." The witness then said that he had asked Baker if he had ever made any other payments than those shown on Exhibit 3 and Baker said he hadn't if Exhibit 3 gave him credit for the 1914 flax crop. The foregoing constitutes the entire foundation for the introduction in evidence of Exhibit 3, the same being the purported account stated. This exhibit contains twenty-seven items of interest charges and seven credits for the payment of interest. The original contract stated the consideration which the purchaser was to pay for the land as follows, the part which is in italics being typewritten and the remainder printed:

"($16,000.00) *Sixteen Thousand Dollars, on or before October first 1919, with interest at the rate of 6% per annum, payable annually on the first day of June each year* with interest at the rate of 8% per cent per annum, payable annually, on the whole sum remaining from time to time unpaid, and pay all taxes, assessments or impositions that may be legally levied or imposed upon said land, subsequent to the year 1909 before the same became delinquent."

In Exhibit 3 the items are entered in this manner:

"Interest from October the 1st, 1909, to Oct. 1st, 1910,   $960.00
Interest from Oct. 1, 1910, to Oct. 1, 1911,   960.00
Interest on interest from Oct. 1, 1910, to Oct. 1, 1911,   96.00
Interest from Oct. 1, 1911, to Oct. 1, 1912,   960.00
Interest on interest from Oct. 1, 1911, to Oct. 1, 1912,   96.00
Interest from Oct. 1, 1912, to Oct. 1, 1913,   960.00
Interest on interest from Oct. 1, 1912, to Oct. 1, 1913,   96.00
Interest from Oct. 1, 1913, to Oct. 1, 1914,   960.00
Interest on interest from Oct. 1, 1913, to Oct. 1, 1914,   96.00
  $5184.00
Interest from Oct. 1, 1914, to March 3, 1915,   405.34
  $5589.34
March 3, 1915 received a payment on interest   100.00
  $5489.34 "

and so on to the end of the statement, carrying it down to October 1, 1921 and showing a total of interest due at that time of $8,667.30. It will be observed that compound interest is charged in the Exhibit at 10 per cent, whereas there is no provision in the contract making it clear that compound interest is to be charged. Under the most favorable construction of the contract—though we do not decide it to be the correct construction—the seller was entitled to no more than 8 per cent upon any overdue interest. Neither does the extension agreement provide for any higher rate, although it does provide for compound interest. Hence, it is apparent that this interest statement—the so-called account stated—does not profess to charge the purchaser (the defendant) with interest according to the express written agreement. Neither does it appear from the evidence that at the time the statement was presented there was any discussion relative to the rate. It appears, rather, that the discussion concerned matters of credit that do not clearly appear on the statement. In view of the circumstances surrounding the exhibit in question, as the same appear in this record, we deem it a misnomer to refer to the exhibit as an account stated. The obligations of the purchaser were expressed in the written contract and there is no evidence of a written assent to the so-called account stated vitally altering its provisions. Thus, while the latter purports to enlarge the obligations expressed in the written contract, it does not conform to the requirements of Section 5938 of the Compiled Laws of 1913 to the effect that a contract in writing may be altered by a contract in writing or by an executed oral agreement but not otherwise. See Valley Lumber Co. v. Smith, 71 Wis. 308, 5 Am. St. Rep. 216, 37 N. W. 412; Jasper Trust Co. v. Lamkin, 162 Ala. 388, 24 L.R.A.(N.S.) 1237, 136 Am. St. Rep. 33, 50 So. 337. Inasmuch as there was no proof at the trial of the amount actually due the plaintiff under the contract alleged in the complaint, the judgment must be reversed and the cause remanded for a new trial.

In view of this disposition of the case, we feel that the contract provision for the payment of interest should be construed. The typewritten portion of the contract clearly provides for the payment of annual interest on $16,000.00 at the rate of 6 per cent. Immediately following this provision the printed portion reads "with interest at the rate of — per cent per annum, payable annually, on the whole sum remain-

ing from time to time unpaid," and the blank is filled with the type-written numerals 8%. There are two possible constructions of this provision: first, that the 8 per cent stipulation conflicts with the 6 per cent stipulation, and one or the other must control and the other be disregarded; second, that the 8 per cent stipulation was inserted with the intention that it should operate harmoniously with the 6 per cent provision and, hence, that it is applicable to any sum of interest that is due and unpaid. We are agreed that under no construction of the contract can the 8 per cent provision supersede the 6 per cent provision for interest on the principal sum; that is, if the two be regarded as conflicting, the 6 per cent provision must control. We are further of the opinion that the contract does not provide for compound interest at 8 per cent with such a degree of clearness as to give satisfactory assurance of correct interpretation. See § 6073, Comp. Laws 1913, as amended by chap. 176, Sess. Laws 1915. However, after this contract had been in effect for approximately ten years, the parties themselves construed it in their written renewal agreement by providing that upon payment in full of the principal, together with interest and compound interest, the purchaser was to be furnished with a deed and abstract. Where contracts are so lacking in clearness as to give rise to doubt concerning the intention of the parties, a construction placed upon the agreement by the parties themselves becomes significant of the true meaning and may be safely relied upon as indicating their real intention, which is after all the true aim of construction and interpretation. In view of this construction by the parties themselves, we are of the opinion that the contract of October 1, 1909 must be construed as providing for interest on the principal sum at 6 per cent, payable annually, and that overdue interest should be compounded at 8 per cent.

Reversed and remanded for a new trial.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE, and JOHNSON, JJ., concur.