# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 06-6044NE

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Robert Edward Olsen, Sr. and, | * | |
| Roselita Marie Olsen, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Robert Edward Olsen, Sr. and, | * | Appeal from the United States |
| Roselita Marie Olsen, | * | Bankruptcy Court for the District of |
| | * | Nebraska |
| Debtors–Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Habitat for Humanity, | * | |
| | * | |
| Objector–Appellee. | * | |

_____

Submitted: February 9, 2007
Filed: March 9, 2007 (Corrected March 14, 2007)

_____

Before KRESSEL, Chief Judge, SCHERMER and VENTERS, Bankruptcy Judges.

_____

KRESSEL, Chief Judge.

1

The debtors appeal from an interlocutory order denying confirmation of their plan. We granted the debtors leave to appeal and we reverse.

## Background

On July 28, 1998, the debtors purchased their home from Habitat for Humanity. As part of the purchase, the debtors executed two promissory notes. Note 1 required the debtors to pay a principal sum of $35,773 without interest over 224 months. The monthly payment was $160 with a final payment of $93. Note 1 contained the provision that if any payment was not made within 10 days of the due date or if any default occurred under the deed of trust, then Habitat had the option to declare the entire balance of the loan immediately due and payable. Note 2 was a non-recourse note which required the debtors to pay Habitat $35,000. However, Note 2 did not require payment so long as the debtors 1) continued to live at the property, 2) timely paid the amounts due under Note 1, and 3) were not in default of the deed of trust. If the debtors met all of these requirements, then the amount due under Note 2 would gradually decline to zero on November 1, 2007.

The debtors failed to make timely payments on the loan starting in September 1998 and have failed to make timely payments throughout their occupancy. Habitat claims that the debtors currently owe $36,113.28 in taxes, fees, and payments on Note 1 and $35,000 on Note 2.

On August 17, 2005, the debtors filed their chapter 13 bankruptcy petition. Their home had been scheduled for a trustee sale on August 18, 2005. A month later, on September 13, 2005, the debtors filed their plan. The plan called for 36 payments of $250. The plan payments would be applied only to the arrearage under Note 1, and the debtors would make their current monthly payments under Note 1 directly to Habitat. The trustee and Habitat objected to the debtor's plan and the bankruptcy court denied confirmation.

2

On December 30, 2005, the debtor filed an amended plan. The amended plan required 48 monthly payments of $250, from which the trustee would pay Habitat's arrearage. The debtors would pay Habitat directly the current payments due under Note 1. Habitat again objected to the plan because the plan did not adequately compensate it for all amounts due under both Note 1 and Note 2. In particular, it did not provide for Note 2 at all. The confirmation hearing on the amended plan took place on March 22, 2006. On March 31, 2006 the court issued an order for an evidentiary hearing on the matter of whether the debtors could reinstate the original terms of Note 2 by curing the default on Note 1 through the bankruptcy plan.

On May 24, 2005, the bankruptcy court denied confirmation of the debtors' amended plan. The court held that the debtors are required to pay the full amount of Note 2 because it is a fixed obligation which became immediately due and payable when the debtors violated the conditions of the note. The court further held that the "fixing" of the obligation cannot be modified under 1322(b)(2) because this would constitute an impermissible modification of Note 2. The court granted the debtors until June 23, 2006 to file an amended plan which repaid both Note 1 and Note 2. On June 22, 2006, the debtor sought leave to appeal the interlocutory order denying confirmation. On July 13, 2006, we granted leave to appeal.

**Standard of Review**

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Debold v. Case*, 452 F.3d 756, 761 (8th Cir. 2006); *Litzinger v. Litzinger (In re Litzinger)*, 340 B.R. 897, 903 (B.A.P. 8th Cir. 2006). The bankruptcy court's interpretation of 1322(a) is a legal conclusion which we review de novo.

3

## DISCUSSION
### "Cure" Means to Return to the Status Quo Ante.

The parties argue about whether the amount owed under Note 2 is "locked -in" or "fixed" and whether the debtors may "de-accelerate" Note 2. These terms of art are not used in the bankruptcy code. Rather than deal with these terms, we go directly to the statute to see what it says.

A chapter 13 plan may modify the rights of holders of secured claims, but the plan may not modify the rights of holders of claims that are secured only by an interest in the debtor's principal residence. 11 U.S.C. § 1322(b)(2). However, there is an exception to the exception to the rule. Section 1322(b)(5) provides that "notwithstanding paragraph (2) of this subsection, [the plan may] provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5).

Curing a default returns the situation to pre-default conditions and nullifies the consequences of that default. *See Di Pierro v. Taddeo (In re Taddeo)*, 685 F.2d 24, 26-27 (2d Cir. 1982).

> The common meaning of 'cure' is to remedy, restore, remove, or rectify, and as the term relates to defaults, 'cure' means to restore matters to the *status quo ante*. Ordinarily the means by which one cures a default is by paying all amounts due and owing; however, 'cure' is the end, not the means, and what the term refers to is the restoration of the way things were before the default. Thus the plain meaning of 'cure,' as used in § 1322(b)(2) and (5), is to remedy or rectify the default and restore matters to the *status quo ante*.

*In Re Clark*, 738 F.2d 869, 872 (7th Cir. 1984)(citations omitted)(emphasis in original).

Note 1 provides that "[i]f any installment payment is not paid with [sic] 10 days after the due date, or any default occurs under the Deed of Trust securing this obligation, Promisee shall have the option to declare the entire unpaid balance hereof immediately due and payable." Note 2 provides that:

> In the event (1) Promisor discontinues living at the Property, or (2) Promisor fails to timely pay Promisee all of the amounts due Promisee under said Promissory Note No. 1, or (3) Promisor is in default under said Deed of Trust securing this obligation, then and in any such event the amount of Promisor's obligation hereunder shall be fixed at the amount indicated on the table above as of the date of the occurrence of any of the above described events and all such amounts under this note shall be immediately due and payable from Promisor to Promisee.

According to the provision in Note 2, the amount due on Note 2 became fixed when the debtor defaulted on Note 1. However, Section 1322(b)(5) allows the debtor to cure the default on Note 1, return it to its status prior to the default and consequently "unfix" the amount due under Note 2.

Although the debtors may cure the default on Note 2 and return to the status quo ante, their plan must still provide for Note 2. In addition, because the bankruptcy court denied confirmation on these grounds, it did not address a number of other issues regarding confirmation.

## CONCLUSION

For the forgoing reasons, the judgment of the bankruptcy court is reversed. This case is remanded to the bankruptcy court for proceedings consistent with this opinion.

––––––––––––––––––

5