2013 ND 218

**Earl R. VAN SICKLE and Harold R. Van Sickle, Plaintiffs, Appellants and Cross–Appellees**

v.

**HALLMARK & ASSOCIATES, INC., Frank Celeste, William R. Austin, Phoenix Energy, Bobby Lankford and Earskine Williams, collectively known as "Interest Holders" NEWCO, and their successors in interest, Missouri Breaks, LLC, Defendants, Appellees and Cross–Appellants.**

**No. 20130003.**

Supreme Court of North Dakota.

Nov. 25, 2013.

Rehearing Denied Jan. 23, 2014.

Robert S. Rau, Minot, N.D., for plaintiffs, appellants and cross-appellees.

Jon R. Brakke (argued) and Caren W. Stanley (on brief), Fargo, N.D., for defendants, appellees and cross-appellants.

SANDSTROM, Justice.

[¶ 1]  Earl and Harold Van Sickle ("Van Sickles") appeal and Hallmark & Associ-

ates, Inc., Frank Celeste, William R. Austin, Phoenix Energy, Bobby Lankford, and Earskine Williams ("Interest Holders"), and Missouri Breaks, LLC, cross-appeal from an amended judgment holding Missouri Breaks liable to the Van Sickles for unpaid pre-bankruptcy confirmation royalties and awarding the Van Sickles interest and attorney's fees. We conclude the court did not err in holding Missouri Breaks liable under state law for pre-bankruptcy confirmation royalties owed to the Van Sickles. We further conclude the district court did not abuse its discretion in awarding the Van Sickles attorney's fees under N.D.C.C. § 47–16–39.1 and did not err in awarding them simple interest under the statute. We affirm.

## I

[¶ 2] This case was previously before this Court in *Van Sickle v. Hallmark & Assocs., Inc.*, 2008 ND 12, 744 N.W.2d 532 ("*Van Sickle I* ").

[¶ 3] The Van Sickles each own a .0013125 percent royalty interest in oil and gas produced from a well designated as Missouri Breaks Unit No. 1, located in McKenzie County. The well is operated under the terms of four leases, and Comanche Oil Company was the original lessee. In 1997, Comanche Oil's interest was assigned to Athens/Alpha Gas Corporation ("Alpha"). Alpha later conveyed approximately 50 percent of the working interest—generally to share costs and profits—in the well to the Interest Holders and continued to operate the well. In 2002, Alpha filed for reorganization under Chapter 11 of the bankruptcy code. *See* 11 U.S.C. §§ 1101–1174. In February 2005, the Interest Holders submitted a competing amended plan of reorganization.

[¶ 4] In May 2005, the United States Bankruptcy Court for the District of North Dakota confirmed—approved—the Interest Holders' amended plan of reorganization, which provided for the formation of Missouri Breaks and the transfer of Alpha's working interest in the well to Missouri Breaks. Under the reorganization plan, Missouri Breaks was required to pay Alpha's creditors using the revenue from its portion of the working interest under the terms of the plan. Under the plan's terms, to be eligible to receive payments from Missouri Breaks, Alpha's creditors had to file a claim in the bankruptcy proceeding, or the confirmed plan or a final order of the bankruptcy court had to specifically allow their claims. The Van Sickles did not file a claim with the bankruptcy court, and neither the plan nor the bankruptcy court's final order included their claim. *See Van Sickle I*, 2008 ND 12, ¶ 14, 744 N.W.2d 532. It is undisputed in this appeal, however, that the Van Sickles were not listed as creditors in Alpha's bankruptcy case, that the Van Sickles had no notice of Alpha's bankruptcy proceedings, and that Missouri Breaks has made post-confirmation royalty payments to the Van Sickles.

[¶ 5] In 2006, the Van Sickles sued the Interest Holders and Missouri Breaks for conversion, intentional tortious interference, and breach of contract for unpaid royalties. They also asserted claims against the defendants for royalties on oil and gas produced before the reorganization plan was confirmed. Prior to the first appeal, the district court had granted summary judgment dismissing Van Sickles' claims.

[¶ 6] In *Van Sickle I*, 2008 ND 12, ¶¶ 1, 29, 744 N.W.2d 532, this Court affirmed the district court's summary judgment dismissal of the Van Sickles' claims for conversion, tortious interference, and post-bankruptcy royalties, but we reversed and remanded for further proceedings on the Van Sickles' claim for pre-bankruptcy-

court-confirmation royalties. We concluded summary judgment was inappropriate because a question of fact existed regarding "whether the Van Sickles had notice of the bankruptcy proceedings, and if they did not receive notice, they must be allowed to adjudicate their contract claim against a party obligated to pay the pre-confirmation royalties." *Id.* at ¶ 17. We further concluded that, because "state and federal courts have concurrent jurisdiction to decide the issue [whether a creditor's claim has been discharged by deciding whether the creditor had notice or actual knowledge of the bankruptcy proceeding]," the district court had jurisdiction "to decide whether the Van Sickles' pre-confirmation claims were discharged in Athens/Alpha's bankruptcy proceedings." *Id.* at ¶ 18.

[¶ 7] On remand, the Van Sickles sought to hold both Missouri Breaks and the Interest Holders liable for pre-confirmation royalties. In 2010, the defendants moved for summary judgment on the issue of their liability to the Van Sickles for pre-confirmation royalties. They argued the Interest Holders were not obligated to pay royalties because they were "operators" of the well under N.D.C.C. § 47–16–39.1. They further argued Missouri Breaks assumed Alpha's assets free and clear of any claims under the reorganization plan and 11 U.S.C. § 1141 and none of the state-law exceptions to successor liability applied. The Van Sickles also moved for summary judgment, contending both the Interest Holders and Missouri Breaks are liable for payment of the pre-bankruptcy-court-confirmation royalties under N.D.C.C. § 47–16–39.1 and state law regarding corporate successor liability. *See Downtowner, Inc. v. Acrometal Prods., Inc.,* 347 N.W.2d 118, 121 (N.D.1984).

[¶ 8] In April 2011, the district court ruled: the Van Sickles' claims for pre-bankruptcy-court-confirmation royalties were not discharged in Alpha's bankruptcy case because they did not receive notice of the bankruptcy; the Interest Holders were not individually liable for pre-confirmation royalty payments because the Interest Holders were not "operators" of the well under N.D.C.C. § 47–16–39.1 and because the Van Sickles made no attempt to pierce Missouri Breaks' corporate veil; and genuine issues of material fact existed regarding Missouri Breaks' liability for pre-confirmation royalties to the Van Sickles under the doctrine of successor liability. The court also rejected the Van Sickles' renewed claim for cancellation of the underlying leases under N.D.C.C. § 47–16–39.1.

[¶ 9] A trial was scheduled for November 2011 on the remaining issue of whether Missouri Breaks was liable to the Van Sickles under successor liability. The trial, however, was continued and in February 2012, the court granted the Van Sickles summary judgment, holding Missouri Breaks was the successor in interest to Alpha as a matter of law and was liable to the Van Sickles for the unpaid pre-confirmation royalties. The court ordered the parties to submit damage calculations.

[¶ 10] After further submissions, the district court entered a final amended judgment, requiring Missouri Breaks to pay each of the Van Sickles $10,086.67, consisting of approximately $3,698 in unpaid royalties and $6,388 in interest. The court also awarded the Van Sickles attorney's fees in the amount of $3,000, or $1,500 each, for a total monetary judgment of about $23,173.

[¶ 11] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06, and the appeal and cross-appeal were timely under N.D.R.App.P. 4. We have jurisdiction un-

der N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 12] This Court's standard for reviewing summary judgment is well-established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Golden v. SM Energy Co.*, 2013 ND 17, ¶ 7, 826 N.W.2d 610 (quoting *Hamilton v. Woll*, 2012 ND 238, ¶ 9, 823 N.W.2d 754).

## III

[¶ 13] When the Van Sickles brought this action, N.D.C.C. § 47–16–39.1 provided in part:

> The obligation arising under an oil and gas lease to pay oil or gas royalties to the mineral owner or the mineral owner's assignee, or to deliver oil or gas to a purchaser to the credit of the mineral owner or the mineral owner's assignee, or to pay the market value thereof *is of the essence in the lease contract*, and breach of the obligation may constitute grounds for the cancellation of the lease in cases where it is determined by the court that the equities of the case require cancellation. If the operator under an oil and gas lease fails to pay oil or gas royalties to the mineral owner or the mineral owner's assignee within one hundred fifty days after oil or gas produced under the lease is marketed and cancellation of the lease is not sought, *the unpaid royalties shall thereafter bear interest calculated at the rate of eighteen percent per annum until paid,* . . . . The district court for the county in which the oil or gas well is located has jurisdiction over all proceedings brought pursuant to this section. *The prevailing party in any proceeding brought pursuant to this section is entitled to recover any court costs and reasonable attorney's fees.* . . .

N.D.C.C. § 47–16–39.1 (2005) (emphasis added); *see also* 1995 N.D. Sess. Laws ch. 439, § 1.

[¶ 14] Although the Van Sickles filed their appeal first, it is more appropriate to resolve Missouri Breaks' issue on cross-appeal first. That is, we decide whether Missouri Breaks is liable to the Van Sickles before we decide whether they are entitled to attorney fees and compound interest because of that liability.

[¶ 15] In their cross-appeal, the defendants argue the district court erred as a matter of law in holding Missouri Breaks liable for Alpha's debts under state law for successor liability.

### A

[¶ 16] The Van Sickles initially contend the defendants waived issues on

appeal and are limited to the issue of the interest awarded, in part, because after judgment was entered, Missouri Breaks moved "for a new trial or alternatively, for amendment" of the district court's findings and judgment with respect to the interest awarded. The defendants respond their motion was filed in response to the district court's erroneous interest calculation in its order for damages and the court recognized the error in subsequently granting the motion. The defendants contend the court considered the motion to be a request to amend findings under N.D.R.Civ.P. 52, rather than a new trial motion under N.D.R.Civ.P. 59, and this Court should not limit the appealable issues, considering this case's "unusual procedural posture" that bifurcated issues of liability and damages.

[¶ 17] It is "well settled" that when a "new trial" motion is made in the trial court, "the party making such a motion is limited on appeal to a review of the grounds presented to the trial court." *Minto Grain, LLC v. Tibert,* 2009 ND 213, ¶ 16, 776 N.W.2d 549 (quoting *Andrews v. O'Hearn,* 387 N.W.2d 716, 728 (N.D.1986)). "Under N.D.R.Civ.P. 59(a), 'new trial' is defined as 'a reexamination of an issue of fact in the same court, after a trial and decision by a jury or court or by a referee.'" *Gustafson v. Poitra,* 2008 ND 159, ¶ 21, 755 N.W.2d 479. "Unlike a N.D.R.Civ.P. 59(b) motion for a new trial, a N.D.R.Civ.P. 59(j) motion to alter or amend a judgment does not usually request a reexamination of issues of fact." *In re N.C.C.,* 2000 ND 129, ¶ 12, 612 N.W.2d 561; *see also Woodworth v. Chillemi,* 1999 ND 43, ¶ 7, 590 N.W.2d 446 (motion to reconsider treated like motion to alter or amend judgment under N.D.R.Civ.P. 59(j)). While motions under either N.D.R.Civ.P. 52(a), to amend or make additional findings, or N.D.R.Civ.P.

59(j), to alter or amend a judgment, are not a prerequisite for appellate review, we have said those motions are advisable when favorable action could obviate the need for an appeal. *See City of Mandan v. Mi–Jon News, Inc.,* 381 N.W.2d 540, 543 (N.D.1986).

[¶ 18] Here Missouri Breaks' post-judgment, two-page motion and brief is captioned and seeks relief as a motion "for a new trial" or "for amendment" of findings and judgment under both "Rules 52 and 59 of the North Dakota Rules of Civil Procedure." We are not bound on appeal, however, by improper labels, and we may look to a motion's substance to decide its proper classification. *In re N.C.C.,* 2000 ND 129, ¶ 11, 612 N.W.2d 561. On the basis of our review, we conclude the motion does not seek a reexamination of factual issues and is not a "new trial" motion under N.D.R.Civ.P. 59(b). Rather, the motion merely requests the court to correct its computation of accrued interest on the amount of unpaid royalties due. We conclude the defendants are not limited on appeal to review of the grounds presented in the motion, and we address the merits of the defendants' cross-appeal.

### B

[¶ 19] The defendants argue the district court erred as a matter of law in holding Missouri Breaks liable for Alpha's debts under the state-law doctrine of successor liability.

[¶ 20] "'The long-established general rule is that a corporation which purchases the assets of another corporation does not succeed to the liabilities of the selling corporation.'" *Benson v. SRT Commc'ns, Inc.,* 2012 ND 58, ¶ 20, 813 N.W.2d 552 (quoting *Downtowner, Inc. v. Acrometal Prods., Inc.,* 347 N.W.2d 118, 121 (N.D.1984)). "The traditional rule of corporate nonliability was developed in re-

sponse to the need to protect a bona fide purchaser from the unassumed debt liability of its predecessor." *Downtowner,* at 121. In *Downtowner* this Court discussed four "well-recognized exceptions" to this general rule under which liability may be imposed on a purchasing corporation:

1. Where there is an express or an implied agreement to assume the transferor's liability;

2. Where the transaction amounts to a consolidation or merger of the two corporations;

3. Where the transferee corporation is merely a continuation of the transferor corporation; or

4. The transaction is an attempt to defraud the creditors of the corporation.

*Downtowner,* 347 N.W.2d at 121; *see also Benson,* at ¶ 20 (quoting the four exceptions to the general rule); *Axtmann v. Chillemi,* 2007 ND 179, ¶ 57, 740 N.W.2d 838 (Kapsner, J., concurring in part and dissenting in part) (same). "A further exception has been recognized where some of the elements of a purchaser in good faith are absent." *Downtowner,* at 121 (citing *Cyr v. B. Offen & Co., Inc.,* 501 F.2d 1145, 1152 (1st Cir.1974)). "The four exceptions have been generally recognized, though rarely applied." *Axtmann,* at ¶ 58 (citations omitted).

[¶ 21] Here, in its April 2011 order, the district court addressed the general rule precluding successor liability, as well as the four exceptions, described in *Downtowner.* The court initially held that summary judgment was not appropriate on the issue of successor liability, concluding there were factual issues to "be determined under the theory of successor liability." In its February 2012 order, however, the district court granted the Van Sickles' renewed motion for partial summary judgment, holding exception one—an express

or an implied agreement to assume the transferor's liability—applied as a matter of law, making Missouri Breaks liable as the successor in interest to Alpha. The court also held the Van Sickles had not established the transaction was an attempt to defraud creditors, as required under exception four. In its order, the district court limited its consideration to exceptions one and four to the general rule, concluding the enactment of N.D.C.C. § 10–19.1–104(4) in 1985 had eliminated two of the *Downtowner* exceptions. The parties dispute whether the 1985 or a 2007 version of N.D.C.C. eliminated two of the *Downtowner* exceptions. They recognize exceptions one and four have not been eliminated by either version of the statute. Because we conclude the district court did not err in imposing successor liability as a matter of law under exception one, we need not address the parties' arguments about whether the enactment of N.D.C.C. § 10–19.1–104(4) in 1985 and its amendment in 2007 have eliminated the second and third *Downtowner* exceptions.

[¶ 22] In *Van Sickle I,* 2008 ND 12, ¶ 17, 744 N.W.2d 532, we remanded this case to the district court, holding that if the Van Sickles had not received notice of the bankruptcy proceedings, "they must be allowed to adjudicate their contract claim against a party obligated to pay the pre-confirmation royalties."

[¶ 23] In its February 2012 order, the district court concluded there was an express or an implied agreement for Missouri Breaks to assume Alpha's liability for pre-confirmation royalties to the Van Sickles. The court held there was no dispute the Van Sickles have a royalty interest in the oil and gas produced by the well and no dispute the well operated under the terms of four leases. The court held that under section 5.2 of the Interest Holders' amended plan of reorganization, Missouri

Breaks "expressly assumed" the four leases under which the well operates.

[¶24] The court cited 11 U.S.C. § 365(b) and concluded that "[a]long with that assumption came the requirement to cure any defaults in the unexpired leases." The court reasoned, "There has been no assertion that the four leases had expired, so non-payment of royalties to the royalty interest holders would be a default in an unexpired lease; therefore, when Missouri Breaks assumed the four leases, it assumed the liability associated with those leases."

### C

[¶25] The defendants' arguments in their cross-appeal are essentially twofold. First, they contend the district court erred in holding that by assuming the leases, Missouri Breaks was required to cure "any and all defaults" previously caused by Alpha under 11 U.S.C. § 365(b). Second, the defendants contend that under the specific terms of the reorganization plan and under 11 U.S.C. § 1141, Missouri Breaks received Alpha's assets "free and clear" of all liens, claims, encumbrances, charges, and interests. Their arguments regarding whether the district court erred in imposing successor liability as a matter of law are intertwined with the reorganization plan and the bankruptcy code. Their contentions, therefore, necessitate some discussion of the bankruptcy code provisions at issue.

[¶26] Relevant to the bankruptcy court's confirmation of the reorganization plan, 11 U.S.C. § 365(b)(1) deals with a trustee's ability to assume or reject executory contracts or leases and provides, in part:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time

of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

Further, 11 U.S.C. § 365(f)(2) states, in part:

(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

Subject to certain limits, in a chapter 11 bankruptcy reorganization, a debtor in possession has the same rights and powers and is subject to the limitations of a trustee. *See* 11 U.S.C. §§ 1101(1), 1104, 1107.

[¶27] Generally, under 11 U.S.C. § 365(b), a trustee or debtor in possession "may not assume an executory contract or lease on which there has been a default unless the trustee [or debtor in possession] complies with three requirements" under the statute. 3 *Collier on Bankruptcy* ¶ 365.06, at 365–51 (16th ed.2013). When there has been no default, a trustee need not comply with the section 365(b) requirements of cure, compensation, and adequate assurance and may simply assume a con-

tract or lease, subject to court approval or unless otherwise barred. *Id.* ¶ 365.06[1], at 365–51–365–52. Under section 365(f), a trustee may then assign a contract or lease, "provided first that the trustee assume the contract or lease, and second that adequate assurance of future performance by the assignee be provided, whether or not the contract or lease is in default. *If the lease is in default, assumption requires compliance with section 365(b), including curing defaults.*" 3 *Collier on Bankruptcy* ¶ 365.09, at 365–74 (emphasis added).

[¶ 28] Here, without any citation or discussion of case law, the defendants argue there was simply no default under the leases that needed to be cured under 11 U.S.C. § 365. They contend the Van Sickles were not lessors under the leases and any liability to the Van Sickles for payment of royalties would have not arisen from a breach of a lease, but rather from later transactions in which the oil and gas were sold. Generally, we note the bankruptcy code provides that a chapter 11 reorganization plan must "provide adequate means for the plan's implementation, such as ... curing or waiving of any default." 11 U.S.C. § 1123(a)(5). Courts have said that while the code does not define "cure," "[a] default is an event in the debtor-creditor relationship which triggers certain consequences," and "[c]uring a default commonly means taking care of the triggering event and returning to pre-default conditions." *In re Entz–White Lumber & Supply, Inc.,* 850 F.2d 1338, 1340 (9th Cir.1988) (quoting *In re Taddeo,* 685 F.2d 24, 26–27 (2d Cir.1982)); *see also In re Olsen,* 363 B.R. 908, 910 (8th Cir. BAP 2007); *In re Johnson,* 184 B.R. 570, 574 (Bankr.D.Minn.1995).

[¶ 29] Under N.D.C.C. § 47–16–39.1, however, our legislature has specifically provided that the obligation to pay oil and gas royalties arising under an oil and gas lease to the "mineral owner or the mineral owner's assignee" is "of the essence" in the lease contract. Under that statute, a failure to pay oil and gas royalties constitutes a breach of the obligation arising under the oil and gas lease. We therefore reject the defendants' argument that Alpha's failure to pay royalties under the oil and gas leases did not constitute a default under the leases, which would need to be cured upon the assumption and assignment of the leases to Missouri Breaks under 11 U.S.C. § 365.

[¶ 30] The defendants also argue that Missouri Breaks received Alpha's assets, that is, the working interest in the well, and hold the property "free and clear" from the pre-confirmation debts of Alpha under both the terms of the confirmed plan of reorganization and under 11 U.S.C. § 1141 (emphasis added), which states, in part:

(c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is *free and clear of all claims and interests* of creditors, equity security holders, and of general partners in the debtor.

We note that 11 U.S.C. § 1141(d)(2) provides, "The confirmation of a plan does not discharge an individual debtor from any debt *excepted from discharge under section 523 of this title.*" (Emphasis added.) Courts have explained that under 11 U.S.C. § 1141, "[o]nce confirmed, a Chapter 11 plan acts as both a contract which binds the parties and as an order of the bankruptcy court." *JCB, Inc. v. Union Planters Bank, NA,* 539 F.3d 862, 870 (8th Cir.2008). However, "notwithstanding the language of section 1141, the discharge of a claim without reasonable notice of the

confirmation hearing is violative of the fifth amendment to the United States Constitution" and thus a creditors' claim cannot be bound to the plan and is not discharged. *Reliable Elec. Co. v. Olson Constr. Co.*, 726 F.2d 620, 622–23 (10th Cir.1984) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

[¶ 31] We conclude the defendants' arguments are unavailing because the Van Sickles did not receive notice of the bankruptcy proceedings and the confirmation order and reorganization plan are simply not binding on the Van Sickles. *See Van Sickle I*, 2008 ND 12, ¶ 16, 744 N.W.2d 532 ("Under 11 U.S.C. § 523(a), certain debts, including debts not listed or scheduled, are not discharged in bankruptcy proceedings" and "[t]he outcome of a bankruptcy reorganization, including the discharge of existing debts, is not binding on a creditor who did not have notice of the bankruptcy proceedings."). Since it is undisputed the Van Sickles did not receive notice, as we said in *Van Sickle I*, under section 523(a), the Van Sickles' contract claims for pre-confirmation royalties and their royalty interest under the four leases were not discharged in the bankruptcy proceeding, despite the fact that under the confirmed plan the leases were assumed and assigned to Missouri Breaks.

[¶ 32] Further, it is clear that under 11 U.S.C. § 365, a trustee or debtor in possession that assumes a lease or other executory contract "must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits." 3 *Collier on Bankruptcy* ¶ 365.03[3], at 365–28; *see also N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (debtor-in-possession assumes executory contract *cum onere* if electing to assume contract); *In re National Gypsum Co.*, 208 F.3d 498, 506 (5th Cir.2000) (when debtor assumes executory contract, it must assume entire contract, *cum onere*, accepting both the obligations and the benefits); *In re Kopel*, 232 B.R. 57, 63–64 (Bankr. E.D.N.Y.1999) ("It is axiomatic that an executory contract generally must be assumed *cum onere*. A debtor cannot simply retain the favorable and excise the burdensome provisions of an agreement." (citation omitted)); *In re Jamesway Corp.*, 201 B.R. 73, 76 (Bankr.S.D.N.Y.1996) (executory contract or unexpired lease is assumed *cum onere*, except as otherwise provided in bankruptcy code); *Black's Law Dictionary* 437 (9th ed.2009) ("With the burden. An item acquired *cum onere* is taken subject to existing burdens and charges."). This is consistent with our state law regarding implied contracts and assignments.

[¶ 33] Under our state law, a contract may be either express or implied. *Good Bird v. Twin Buttes Sch. Dist.*, 2007 ND 103, ¶ 10, 733 N.W.2d 601; *B.J. Kadrmas, Inc. v. Oxbow Energy, LLC*, 2007 ND 12, ¶ 11, 727 N.W.2d 270. "An express contract is one the terms of which are stated in words," while an "implied contract is one the existence and terms of which are manifested by conduct." *B.J. Kadrmas*, at ¶ 11 (quoting N.D.C.C. § 9–06–01). For either type of contract to be enforceable, there must be a mutual intent to create a legal obligation. *Id.* The mutual assent of the parties is determined by their objective manifestations, rather than secret intentions. *Id.* "Under contracts implied in fact, the court merely attempts to determine from the surrounding circumstances what the parties actually intended." *Id.* (quotation omitted).

[¶ 34] For assignment agreements, we have explained that such agreements "may not only assign rights, but may also delegate duties to the assignee."

*Golden,* 2013 ND 17, ¶ 10, 826 N.W.2d 610; *see also Rosenberg v. Son, Inc.,* 491 N.W.2d 71, 73 n. 1 (N.D.1992). "An assignment is an expression of intention by the assignor that his duty shall immediately pass to the assignee, and the benefitted party's consent to the transfer can be manifested *either expressly or by implication.*" *Golden,* at ¶ 10 (citing *Estate of Murphy,* 554 N.W.2d 432, 436 (N.D.1996) (emphasis added)). Generally, an assignee is responsible only for the assignor's obligations that the assignee contracts to undertake. *See Golden,* at ¶ 10; *Collection Ctr., Inc. v. Bydal,* 2011 ND 63, ¶ 16, 795 N.W.2d 667. As we recently discussed:

> An assignment of contractual rights does not necessarily carry with it a delegation of contractual duties, even if the assigned contract specified that it was binding on the assigns of the parties to the contract. Where an assignee of a contract makes it known to the assignor that he or she did not intend by accepting the assignment to assume the assignor's duties and obligations under the contract, the duties and obligations are not delegated and the assignee makes no implied promise to perform them. The mere assignment of a bilateral executory contract may not be interpreted as a promise by the assignee to assume the performance of the assignor's duty. However, where it is clearly the intent of the parties, the assignee also succeeds to the obligations of the contract. This intent may be manifested by the parties' conduct, the subject matter of the contract, the language of the assignment, or the surrounding circumstances. The court will consider the totality of the fact situation. An assumption of obligations may be implied from an acceptance of benefits or the performance of duties under the contract.

*Golden,* at ¶ 10 (quoting 6A C.J.S. *Assignments* § 94, 485–86 (2004) (footnotes omitted)).

[¶ 35] In this case, the statute provides that the obligation in N.D.C.C. § 47–16–39.1 to pay royalties under an oil and gas lease is "of the essence" and provides remedies, including possible cancellation of the lease when the "equities of the case" so require. Although the defendants claim the Van Sickles are attempting to obtain the benefits of the bankruptcy reorganization plan without being bound by the plan's terms, we are not convinced. It is undisputed the Van Sickles had no notice of, or opportunity to participate in, Alpha's bankruptcy proceedings and thus are not bound by the plan. Missouri Breaks, on the other hand, is the entity formed under the reorganization plan and received assignment of Alpha's interest under the relevant oil and gas leases. As the defendants assert on appeal, the well was the "primary asset" of the "now-defunct entity" known as Alpha. Under the reorganization plan, the oil and gas leases under which the Van Sickles are entitled to royalty payments were specifically assumed, rather than rejected, under 11 U.S.C. § 365(b). Despite the requirement under § 365 to cure defaults under the leases, the leases were nonetheless assumed and assigned to Missouri Breaks without the Van Sickles' receiving notice or even being scheduled as creditors. Missouri Breaks took over as operator of the well and agreed under the plan to pay Alpha's creditors using revenue from its portion of the working interest.

[¶ 36] Missouri Breaks has received the benefit and revenue from the "primary asset" of Alpha without payment of any of the pre-bankruptcy-court-confirmation royalties owed to the Van Sickles. Although the defendants attempt to rely on the specific provisions in the reorganiza-

tion plan and 11 U.S.C. § 1141(c) to argue Missouri Breaks received Alpha's interest in the leases "free and clear" of all claims and interests, these provisions simply do not bind the Van Sickles, and their claims for unpaid pre-confirmation royalties were not discharged in the bankruptcy proceedings.

[¶ 37] Because the Van Sickles' claims under N.D.C.C. § 47–16–39.1 for unpaid royalties were not addressed or discharged in the bankruptcy proceedings, we conclude Missouri Breaks received assignment of Alpha's interest subject to the burden of the Van Sickles' statutory claims. The undisputed facts show Missouri Breaks was formed to receive assignment of Alpha's interest in the leases, has taken over operating the well under the leases, has received revenue from operation of the well under the leases, and has undertaken the obligation under the reorganization plan to pay creditors, who presumably received notice and had "Allowed Claims" under the plan. Under these undisputed facts and circumstances, we conclude the district court did not err in concluding as a matter of law that Missouri Breaks, in receiving Alpha's "primary asset" under the plan, implicitly agreed to assume its statutory liability to the Van Sickles for the unpaid pre-confirmation royalties, which were not discharged in the bankruptcy proceedings.

[¶ 38] We conclude the district court did not err as a matter of law in holding Missouri Breaks liable for the Van Sickles' claims under N.D.C.C. § 47–16–39.1 for unpaid royalties and interest.

### IV

[¶ 39] The Van Sickles raise two issues on appeal, neither of which involves the district court's calculation of the pre-bankruptcy-court-confirmation royalties or its decision to impose liability only on Missouri Breaks in the amended judgment. Rather, the Van Sickles argue the district court erred in its award of attorney's fees and in its award of simple interest, rather than compound interest, under N.D.C.C. § 47–16–39.1.

### A

[¶ 40] The Van Sickles argue the district court in its award of attorney's fees erred as a matter of law when it offset various claims and defenses having nothing to do with their right to attorney's fees under N.D.C.C. § 47–16–39.1.

[¶ 41] In its April 2012 order, the district court initially held an award of attorney's fees was not warranted. The court reasoned that, although the Van Sickles had prevailed in its February 2012 order concluding Missouri Breaks was liable to the Van Sickles for pre-confirmation royalties and interest as Alpha's successor in interest, each of the parties had prevailed on one or more of the claims, and this Court had affirmed the dismissal of some of the Van Sickles' claims in *Van Sickle I*, 2008 ND 12, 744 N.W.2d 532. In its November 2012 order, however, the district court addressed the Van Sickles' motion for reconsideration of damages and revisited its prior ruling denying the Van Sickles' attorney's fees. The court construed N.D.C.C. § 47–16–39.1 and concluded in part that "even though all of the parties prevailed on some part of this litigation, the Van Sickles had to take the initiative to insure [sic] that they received that to which they were entitled, including attorney fees." The court awarded the Van Sickles attorney's fees in the amount of $3,000.

[¶ 42] The Van Sickles argue, because they were the "prevailing parties" for unpaid royalties under N.D.C.C. § 47–16–39.1, they are entitled to their fees without considering any other issues or offsets.

They argue any "setoff" of attorney's fees is inappropriate, in part, because their other claims were separate and discrete claims from their statutory claim and the Interest Holders had not applied for fees under the statute. The Van Sickles further argue that none of the defendants were held to be "immune" from owing damages. They claim the Interest Holders are working interest owners and "are/were the principal of the agent Missouri Breaks" and liability "flowed upon the Interest Holders as well as Missouri Breaks." The Van Sickles generally contend the court misapplied the law by considering issues submitted by the defendants that had no relevance or materiality to the Van Sickles' attorney's fees and the court did not award reasonable attorney's fees in light of the Van Sickles' submissions.

[¶ 43] The defendants argue, however, there can be no dispute the Interest Holders were prevailing parties on all of the Van Sickles' claims, including their claim that the Interest Holders were "operators" under N.D.C.C. § 47–16–39.1. The defendants assert the Interest Holders had requested attorney's fees in an answer to Van Sickles' amended complaint and the district court erred as a matter of law in determining the Interest Holders were not entitled to attorney's fees as "prevailing parties." The defendants also urge this Court to conclude either that Missouri Breaks prevailed on the majority of the Van Sickles' claims or that neither the Van Sickles nor Missouri Breaks were "prevailing parties," so neither is entitled to attorney's fees.

[¶ 44] Our case law for deciding a "prevailing party" for costs and disbursements under N.D.C.C. § 28–26–06 provides some guidance for construing the same term under N.D.C.C. § 47–16–39.1. In *Carpen-*

*ter v. Rohrer*, 2006 ND 111, ¶¶ 34–35, 714 N.W.2d 804, we explained:

Determining who is a prevailing party for an award of disbursements under N.D.C.C. § 28–26–06 is a question of law, subject to de novo review, while the question of the amount to be allowed for disbursements and costs is one of fact, subject to an abuse of discretion standard. *Nesvig v. Nesvig*, 2006 ND 66, ¶ 34, 712 N.W.2d 299. The determination of who is a prevailing party entitled to recover necessary disbursements under N.D.C.C. § 28–26–06 is based upon success on the merits, not damages. *Dowhan v. Brockman*, 2001 ND 70, ¶ 11, 624 N.W.2d 690 (citing *Lemer v. Campbell*, 1999 ND 223, ¶ 9, 602 N.W.2d 686). If opposing litigants each prevail on some issues, there may not be a single prevailing party for whom disbursements may be taxed. *Dowhan*, at ¶ 11. A prevailing party is one "in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Black's Law Dictionary* 1154 (8th ed.2004).

"Generally, the prevailing party to a suit, for the purpose of determining who is entitled to costs, is the one who successfully prosecutes the action or successfully defends against it, prevailing on the merits of the main issue, in other words, the prevailing party is the one in whose favor the decision or verdict is rendered and the judgment entered." *Dowhan v. Brockman*, 2001 ND 70, ¶ 11, 624 N.W.2d 690.

[¶ 45] Here the district court entered an amended judgment in favor of the Van Sickles, awarding them damages from Missouri Breaks for unpaid pre-bankruptcy-court-confirmation royalties and interest. Accordingly, we conclude as a matter of law, the Van Sickles were the "prevailing parties" as to Missouri Breaks under

N.D.C.C. § 47–16–39.1. Additionally, on remand, the district court specifically held the individual Interest Holders were not the proper parties to be liable for the pre-confirmation royalties under N.D.C.C. § 47–16–39.1, and the Van Sickles have not raised a separate issue on appeal challenging the district court's ruling on this issue.

[¶ 46] Similarly, we reject the Interest Holders' argument the district court erred as a matter of law in determining the Interest Holders were not entitled to attorney's fees as "prevailing parties." Other than a general request for attorney's fees in their answer and in response to the Van Sickles' request under the statute, the Interest Holders do not appear to have made any application or submissions of their own supporting an award of attorney's fees to them under the statute. Therefore, we conclude the district court did not err in deciding the Van Sickles were the "prevailing parties" entitled to attorney's fees under N.D.C.C. § 47–16–39.1.

[¶ 47] The Van Sickles nevertheless claim the district court erred in "setting off" their attorney's fees request or gave inadequate consideration to their submissions in support of reasonable attorney's fees.

[¶ 48] These arguments go mainly to the amount of attorney's fees awarded. "[I]t is well established that district courts are considered experts in determining what is a reasonable amount of attorney fees and we will not reverse the court's decision about the amount and reasonableness of the attorney fees absent a clear abuse of discretion." *Red River Wings, Inc. v. Hoot, Inc.*, 2008 ND 117, ¶ 49, 751 N.W.2d 206 (quotation omitted). We have outlined the "heavy burden" placed on a party alleging an abuse of discretion:

An abuse of discretion by the district court is never assumed, and the burden is on the party seeking relief affirmatively to establish it. The district court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. The party seeking relief must show more than the district court made a "poor" decision, but that it positively abused the discretion it has under the rule. We will not overturn the district court's decision merely because it is not the decision we may have made if we were deciding the motion.

*Nesvig v. Nesvig*, 2006 ND 66, ¶ 12, 712 N.W.2d 299 (citations omitted).

[¶ 49] Here we recognize the significant amount of litigation the Van Sickles dedicated to other unsuccessful causes of action, other than claims under N.D.C.C. § 47–16–39.1, and against parties held not liable under the statute. We also note the amount ultimately awarded to the Van Sickles for unpaid pre-confirmation royalties was not directly challenged on appeal, other than calculation of the statutory interest. We believe the district court considered the extensive proceedings and disputes between these parties and was in the best position to determine the appropriate amount of attorney's fees under these circumstances.

[¶ 50] On the basis of our review of the record, we cannot conclude that the district court acted in an arbitrary, unreasonable, or unconscionable manner or that its decision was not the product of a rational mental process leading to a reasoned determination. We therefore conclude the court did not abuse its discretion in awarding the Van Sickles $3,000 in attorney's fees.

## B

[¶ 51] The Van Sickles argue the district court did not correctly calculate interest on the royalties due using eighteen percent interest and should have allowed for multiplication of interest rather than applying simple interest at that rate. The Van Sickles essentially argue that under N.D.C.C. § 47–16–39.1, the court should have awarded compound interest, rather than simple interest.

[¶ 52] Statutory interpretation is a question of law, fully reviewable on appeal. *GO Comm. ex rel. Hale v. City of Minot*, 2005 ND 136, ¶ 9, 701 N.W.2d 865. "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained." *See* N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the relevant language is clear and unambiguous, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05.

[¶ 53] The crux of the Van Sickles' argument seems to be N.D.C.C. § 47–16–39.1 "does not rule [compound interest] out." The Van Sickles' argument, however, cuts both ways, in that the statute also does not provide for compound interest. In the context of other statutes, the legislature has specifically used language designating or describing when compound interest is appropriate. *See, e.g.*, N.D.C.C. § 1–01–36 ("The words 'compound interest' mean interest added to the principal as the former becomes due and thereafter made to bear interest."); N.D.C.C. § 13–01.1–03 ("Any interest which remains unpaid at the end of any forty-five-day period or which remains unpaid at the end of any specified period provided by contract must be added to the principal amount of the debt and must thereafter accumulate interest."); N.D.C.C. § 28–20–34 (addressing interest on judgments and stating interest "may not be compounded in any manner or form"); N.D.C.C. § 47–14–09(1) (defining usury and stating, in part, "in the computation of interest the same may not be compounded"); *see also* N.D.C.C. § 54–52.6–03(2) (suspended from October 1, 2013, through July 31, 2017; *see* 2013 N.D. Sess. Laws ch. 431, § 19) (using term "compound interest" in one formula to calculate amount to be transferred to defined contribution retirement plan for individual electing to terminate membership in public employees retirement system); *cf. Thompson v. Baker*, 52 N.D. 366, 371, 203 N.W. 195, 197 (1925) (under existing statutes, compound interest could not be computed unless contract so provided).

[¶ 54] Here, although the legislature has defined the term "compound interest" in N.D.C.C. § 1–01–36, the legislature did not use this term in N.D.C.C. § 47–16–39.1. Section 47–16–39.1, N.D.C.C., merely states that "the unpaid royalties shall thereafter bear interest calculated at the rate of eighteen percent per annum until paid." The plain language of the statute does not specifically require a court's award of interest under the statute to be compounded. We therefore conclude the court did not err in awarding the Van Sickles simple interest, rather than compound interest, under N.D.C.C. § 47–16–39.1.

## V

[¶ 55] We have considered the parties' remaining arguments and conclude they are without merit or unnecessary to our decision. The amended judgment is affirmed.

[¶ 56]   DONOVAN J. FOUGHTY, D.J., GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, JJ., concur.

[¶ 57]   The Honorable DONOVAN J. FOUGHTY, D.J., sitting in place of KAPSNER, J., disqualified.